UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In Re Application Of: <br> CARLOS VITERI, <br><br>     Petitioner, <br><br> vs. <br><br> GABRIELLA MARIA PFLUCKER, <br><br>     Respondent. | ) <br> ) <br> ) <br> ) <br> ) Case No. 08 CV 50031 <br> ) Judge Kapala <br> ) Magistrate Judge Mahoney <br> ) <br> ) <br> ) <br> ) |

**BRIEF IN SUPPORT OF PETITION FOR RETURN
OF CHILD UNDER THE HAGUE CONVENTION**

Petitioner, CARLOS VITERI ("Petitioner"), by his attorneys, Rosa M. Tumialán and Katharine N. Dunn of Dykema Gossett PLLC, states as follows for his Brief in Support of Petition for Return of Child Under the Hague Convention:

**I.   FACTS**

Petitioner, Carlos Viteri, is a citizen of Peru. [DE 1, Ex. B, ¶1]. Respondent Gabriella Maria Pflucker ("Respondent") is also a Peruvian citizen. *Id*. Petitioner and Respondent cohabitated in Peru at all relevant times. *Id*. The cohabitation produced a child, Valeria Carla Viteri Pflucker ("Valeria"), who was born on August 24, 2000, in Lima, Peru. [DE 1, Ex. A] Valeria is seven (7) years old as of this writing.

Petitioner's and Respondent's relationship ended in October 2003 when Valeria was 3 years old. [DE 1, Ex. B, ¶1]. In or about October 2003, Petitioner filed a claim in a Peruvian family court seeking visitation rights over Valeria ("Regimen de Visita") under case number 183504-2003-00113-00. *Id.* at ¶2. The petition was granted on October 21, 2005. [DE 1, Ex. C]. Petitioner was awarded visitation on weekends and every Wednesday. *Id*. Respondent appealed this order which was then affirmed by the Specialized Family Court on April 6, 2006.

A copy of the April 6 order, with accompanying translation is attached hereto as Exhibit A. Petitioner last saw his daughter on or about August 15, 2005. Petitioner asserts that Respondent secured travel documents for Valeria by filing a petition in another jurisdiction in Peru falsely claiming that she did not know Petitioner's whereabouts.[1]  [DE 1, Ex. B, ¶4]. The Peruvian judge granted a 30 day tourist visa for travel outside of Peru based on Respondent's representations in Court. Respondent left Peru with Valeria on September 3, 2005. Petitioner would not have consented to allowing respondent to take Valeria to the United States if he had known it was Respondent's intention to remain there. *Id*. at ¶6.

Respondent should have returned to Peru on expiration of her 30 day visa. Petitioner contacted the Canadian consulate seeking information as to the whereabouts of Valeria and requesting her return to Peru when Respondent failed to return. *See* Letter from Canadian Central Authority dated September 27, 2006 received by the Peruvian Central Authority on October 11, 2006 acknowledging Petitioner's inquiry attached hereto as Exhibit B. Petitioner first began contacting United States and Canadian Consulates in November 2005. *See* November 4 2005 requests to United States and Canadian Consulates attached hereto as Group Exhibit C.[2] Petitioner also contacted Peruvian agencies to enlist their assistance in finding and returning Valeria to Peru. *See* Application to Ministerio de la Mujer y Desarrollo Social Del Peru ("MIMDES"), the Peruvian Central Authority, attached hereto as Exhibit D. The Canadian Central Authority's investigation revealed that Respondent was in the United States in mid 2007. The matter was then referred to the National Center for Missing and Exploited Children ("NCMEC"), the United States' Central Authority. NCMEC then embarked on an investigation

---

[1] Criminal charges for Respondent's fraudulent representations are currently pending in Peru. See Exhibit E attached hereto.

[2] Translation of this document will be provided to the Court and counsel.

to confirm the data received from its Canadian counterpart. Once confirmed, NCMEC engaged in an attorney search and in November 2007, Dykema Gossett PLLC agreed to assist in preparing and filing a Petition for Return.

Petitioner filed this petition on February 28, 2008. [DE 1]. The Petition was presented to the Court on March 18, 2008, at which time an initial hearing was conducted. Respondent appeared and requested a continuance to secure counsel. The Court granted the oral motion and set this matter for hearing on the issue of the child's habitual residence on March 21, 2008. [DE 10]. Petitioner now requests entry of an order by this Court finding that Valeria's country of habitual residence is Peru and ordering her return to that country consistent with the Hague Convention.[3]

## II.    ARGUMENT

The principal issue presented is whether Peru was Valeria's country of habitual residence at the time she was abducted by her mother and brought to the United States in September 2005 and failed to return in October 2005 as required by the limited visa granted. Petitioner submits that the facts set out above, coupled with admissions made in open court, underscore the fact Valeria habitually resided in Peru before her abduction. This Court should enter an order providing for her return.

### A.    The Hague Convention Vests This Court With The Authority To Order The Child To Return to Peru.

The provisions and objectives of the Hague Convention on the Civil Aspect of International Child Abduction (the "Hague Convention" or the "Convention") provide this Court

---

[3] Petitioner is presently subject to a Peruvian court order preventing him from traveling outside of Peru. Petitioner filed a motion seeking temporary relief from this order for purposes of this action. This motion was filed on December 19, 2007, but has not yet been ruled on as of this writing. A copy of the motion filed by Petitioner, with an accompanying translation, is attached hereto as Exhibit E.

3

with the authority necessary to order the return of Valeria to Peru. The United States and Peru are both parties to the Hague Convention. The United States became a party to the Convention on July 1, 1988 and implemented its provisions through the International Child Abduction Remedies Act. 42 U.S.C. § 11601 *et seq.* ("ICARA"); *See also Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 862 (N.D. Ill. 2001).

The individual parties to the Hague Convention adopted it with a goal to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, preamble. The Convention seeks to return the parties to their pre-removal status quo. *Fabri*, 221 F. Supp. 2d at 864 quoting *Friedrich v. Friedrich (Friedrich I)*, 983 F.2d 1396, 1400 (6th Cir. 1993).

The Hague Convention vests this Court with "jurisdiction to decide the merits of the abduction claim, ***but not the merits of the underlying custody dispute***." Hague Convention, art. 19; 42 U.S.C. § 11601(b)(4); *Koch v. Koch*, 450 F.3d 703, 714 (7th Cir. 2006).; *Zarate v. Perez*, 1996 WL 734613, at *1 (N.D. Ill. Dec. 23, 1996) quoting *Friedrich v. Friedrich* (*Friedrich II)*, 78 F.3d 1060, 1064 (6th Cir. 1996) (emphasis added).[4] Respondent remains free to challenge the ultimate custody of Valeria, if she wishes, but that dispute is more properly resolved by Peruvian authorities once the child is returned to Peru. Article 1 of the Convention defines these limited goals:

> (a)   to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
>
> (b)   to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

---

[4] A copy of the *Zarate* opinion is attached hereto as Exhibit F.

4

Convention, Article 1. *Koch*, 450 F.3d at 711. The Convention "is designed to restore the "factual" status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent." *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995). The retention of a child is wrongful under the Convention if: (1) it is in breach of the rights of custody attributable to a person, institution or any other body, under the law of the state in which the child was a "habitual resident" immediately before the removal or retention; and (2) if the person or institutional body was exercising those custody rights at the time of the retention. Hague Convention, art. 3; *See also Tabacchi v. Harrison*, 2000 WL 190576, at *8 (N.D. Ill. Feb. 8, 2000) (Exhibit G). Both elements are satisfied here.

### B.   Valeria Viteri Pflucker Was Wrongfully Removed And Retained Under the Hague Convention.

The Hague Convention requires Respondent to return Valeria to Peru because Respondent wrongfully removed the child from her habitual residence in Peru and wrongfully retained the child in the United States. In proving that Respondent's removal and retention was "wrongful" under the Hague Convention, Petitioner must establish by a preponderance of the evidence that: (1) Respondent removed or retained Valeria from her habitual residence; and (2) Petitioner had custody rights relating to Valeria and was exercising them at the time of the wrongful removal or retention, or would have done so but for Respondent's actions. Hague Convention, art. 3; *Koch*, 450 F.3d at 712; *Fabri*, 221 F. Supp. 2d at 863; *Freier v. Freier*, 969 F. Supp. 436 (E.D. Mich. 1996).

#### 1.   Peru Is Valeria's Country Of Habitual Residence.

Hague Convention petitions first require determination of the "habitual residence" of the minor child at the time of the wrongful retention period. The facts reveal that Valeria was a

5

habitual resident of Peru when she was wrongfully removed from that country in September 2005 and retained in the United States after her visa expired in October 2005.

The provisions of the Hague Convention do not specifically define "habitual residence." Courts addressing the issue look to case law to help define and apply the term. Earlier decisions teach that this analysis turns on looking "back in time" at the child's home before the removal or retention. *Tabacchi v. Harrison*, 2000 WL 190576 at *8 (N.D. Ill. Feb. 10, 2000) (Exhibit H); *Friedrich I*, 983 F.2d at 1401; *Freier*, 969 F. Supp. at 439-40. On its face, habitual residence pertains to customary residence before the removal. *Friedrich I,* 983 F.2d at 1401. The question of what constitutes habitual residence in this Circuit was considered in *Koch*.

The *Koch* court adopted the Ninth Circuit test announced in *Mozes v, Mozes*, 239 F.3d 1067 (9th Cir. 2001). *See Koch*, 450 F.3d at 715. This test first requires determining whether the parents shared an intent to abandon the earlier habitual residence. *Id*. This determination requires examination of both the acts and declarations of the parents. *Id*.

The undisputed facts here show that there was no intent, joint or otherwise, to abandon Peru as the original habitual residence when the child was removed from Peru and retained in the United States. Respondent secured travel documents in a surreptitious manner precisely because Petitioner would not agree to allow his daughter to leave the country. Further, Respondent only secured a temporary visa for travel outside Peru. At the time she left Peru with the child, Respondent openly declared and demonstrated that the trip was a temporary one at best.

The *Koch* court emphasized the parents' ***joint*** decision to relocate to Germany from the United States. The court concluded that, after three years of working as a family to make a home there, the move was of a settled nature. *Koch*, 450 F.3d at 717. By stark contrast, the removal to the United States here was unilateral, without Petitioner's consent and ostensibly temporary in

6

nature. Indeed, Respondent's failure to return to Peru when her visa expired coincides with a Peruvian court's order awarding Petitioner visitation rights. [DE 1, Ex. C]. Respondent challenged this order, which was affirmed on April 6, 2006. *See* Exhibit A. It is reasonable to infer that the decision to remain in the United States was to disrupt the status quo and forum shop for a preferred jurisdiction—the very result the Hague Convention was intended to avoid. *Koch*, 450 F.3d at 718. *See also* Elisa Perez-Vera, Explanatory Report, ¶14; 16 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982) ("Perez Report").[5] The *Koch* opinion teaches that the country of habitual residence will be deemed to be the last country where there was a degree of settled purpose. That country is Peru under these facts. The time spent in the United States does not factor into this consideration.

The limited retrospective approach adopted in *Koch*, focusing on abandonment of one habitual residence in favor of another, was foreshadowed by the Northern District in *Tabacchi* where the court concluded that the amount of time spent by a child in the United States after her wrongful removal from Italy was irrelevant to the determination of her habitual residence under the Hague Convention because the time spent in America occurred after her questionable removal. *Tabacchi*, 2000 WL 190576 at *8-9. Similarly, the time Valeria spent in the United States since October 2005 should have no effect on this Court's analysis.

Valeria was born in Peru in 2000 and lived there continuously until her abduction in September 2005. Indeed, the only move Valeria made during her life was when she was abducted by her mother. Valeria's presence in the United States is the product of her wrongful abduction only. She clearly did not "reside" in the United States and had never been to the

---

[5] The full text of the Perez Report is found at www.hiltonhouse.com/articles/Perez_rpt.txt

7

United States until she was abducted. The false pretenses under which Respondent secured travel documents for Valeria to travel internationally from Peru should not be overlooked. A Peruvian court entered a visitation order which Respondent refused to honor. Respondent resorted to subterfuge to accomplish what she knew Petitioner would not voluntarily permit. Each aspect of Valeria's background supports finding that Peru is Valeria's country of habitual residency. At the time of her abduction, Valeria had lived in Peru for her entire life. Even including Valeria's time to date spent in the United States and her young age, Valeria has lived in Peru over 75% of her life. A contrary conclusion would allow the abducting parent to alter the country of habitual residence simply by abducting the child. This is contrary to the intended purpose of the Hague Convention. *Koch v. Koch*, 450 F. 2d at 717-718; *Kijowska v. Haines*, 431 F. Supp. 2d 873, 879-880 (N.D. Ill. 2006).

### 2. Petitioner Had Custody Rights To Valeria That He Was Exercising When Valeria Was Abducted.

The second prong of this analysis requires proof that Respondent interfered with Petitioner's custody rights that he was exercising at the time of abduction. Hague Convention, art. 3; *Koch*, 450 F.3d at 712. This element is also satisfied.

A removal or retention is wrongful under Article 3 of the Hague Convention, if: (a) it is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised or would have been but for the removal or retention. Custody rights may arise by operation of law as determined by the law of the child's country of habitual residence. Hague Convention, art. 3. "Custody rights which arise by operation of law in the State of habitual residence are protected; they need not be conferred by a court order to fall within the

8

scope of the Convention. Hague Convention, art. 3(c)(i). Violation of a custody order is not a prerequisite for seeking a child's return under the Convention. Hague Convention, art. 3(c). Thus, a parent who does not have a custody order for a child may invoke the Convention for the child's return as much as a parent who has a custody order.

This section of the Hague Convention requires courts to apply the laws of foreign jurisdictions. For example, in *Fabri*, a court in this circuit applied Italian law to define the custody rights of a child who was the subject of a Hague petition because she was a habitual resident of Italy at the point that she was wrongfully removed to Chicago. *Fabri*, 221 F. Supp. 2d at 862-63.

By operation of Peruvian laws, Petitioner enjoyed custody rights to Valeria at the time of her wrongful removal in September 2005, which rights he was in the process of exercising when Valeria was abducted. These rights are exemplified in Peru's codification of *patria potestas*.

The concept of *patria potestas* predates the modern concept of custody rights as compared to rights of access. *Lalo v. Malca*, 318 F. Supp. 2d 1152, 1154 (S.D. Fla, 2004). *Patria postestas* historically protected the father's rights to the child, which were considered absolute under Roman law. *Whallon v. Lynn*, 230 F.3d 450, 457 (1st Cir. 2000). This concept was eroded in American courts in favor of the best interests of the child analysis. *Whallon*, 230 F.3d at 457. But the concept developed differently in legal systems based on civil codes. *Id*. Latin American countries, including Peru, recognize some form of *patrias postestas* rights, which confers a divisible custody right for purposes of relief under the Hague Convention. *Whallon*, 230 F.3d at 458. *See also Pesin v. Rodriguez*, 77 F. Supp. 2d 1277, 1286 (S.D. Fla. 1999) (Venezuela); *Lalo*, 318 F. Supp. 2d 1152 (Panama).

Peru's codification of *patria potestas*, or "parental authority" is found at El Codigo Civil de los Ninos y Adolescentes.[6] A review of the Code shows that *patria potestas* refers to a general duty to provide support, love, nurturing, as well as child rearing obligations to ensure the development of a moral responsible person. *See* Art. 74. The Code expressly provides that separation does not terminate or suspend parental authority. *See* Art. 76. Further, Peru's Civil Code expressly recognizes parental authority rights for children born out of wedlock where, as here, the parent recognizes the child. *See* Codigo Civil, Libro III, Titulo III, Art. 421- Patria potestad de hijos extramatrimoniales.[7] Mexico's recognition of an unmarried parent's *patria potestas* rights led the *Whallon* court to conclude that the left behind father had a right of custody under the Hague Convention. A similar result is warranted here.

It should not be overlooked that Respondent is not prohibited from challenging the custody of Valeria in Peru. An action under the Convention and ICARA is ***not*** an action to determine the merits of custody rights. *Koch, supra.* This Court's task here is simply to determine which country is the proper forum for that custody determination. *Id.* That forum is Peru. No other conclusion is warranted under these facts.

    **C.**    **No Exceptions That Would Allow The Court To Refuse To Return The Child Apply In This Case.**

Article 13 of the Convention provides that a court loses its discretion to order the return of a child if one of four exceptions are satisfied. These exceptions are: (1) The Hague proceeding was initiated more than one year after the removal of the child and the child has

---

[6] An English version of the Peruvian Code, along with the Spanish version is attached hereto as Exhibit H. The Spanish text of the Code is published on the Peruvian Central Authority's website, http://www.mimdes.gob.pe/dgnna/Ley27337.html#LibroTercero.

[7] The full Spanish text of the Peruvian Civil Code is located at the International Center for Not-For-Profit law's website, www.icnl.org. Art. 421 of the Code, with English translation is attached hereto as Exhibit I.

become "well-settled" in his or her new environment; (Hague Convention, art. 12); (2) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; (Hague Convention, art. 13(a)); (3) there is a grave risk that return of the child would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation; (Hague Convention, art. 13(b)); or (4) return of the child is not permitted by the fundamental principals of the requested State relating to the protection of human rights and fundamental freedoms. (Hague Convention, art. 20). The party opposing return bears the burden of proving the applicability of these exceptions by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A).

Courts generally characterize the confines of these exceptions to be so narrow that a federal court "should use, when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Friedrich II*, 78 F.3d at 1067.

### a. Timing of the Petition

Petitioner submits that the delay in bringing the Petition was due to his inability to immediately determine Respondent's whereabouts coupled with the delay in securing the assistance of counsel. Petitioner originally believed that Respondent was either in Canada or the United States. *See* Exhibit C. The Canadian Central Authority discovered that Respondent was in the United States and so advised its American counterpart in mid 2007. The NCMEC then undertook to confirm the information it received which it did in the fall of 2007. The Center's referral process resulted in the retention of Dykema Gossett PLLC in November 2007. Evaluation of flight risk difficulty in securing supporting documents and translations of same, coupled with the order restricting Petitioner from leaving Peru, account for the remainder of the

delay.[8] Allowing this time to weigh in Respondent's favor defeats the purpose of the Hague Convention is designed to serve and overlooks that Petition began his search in November 2005. *See* Exhibit C. Even if the Court should conclude that the somehow weighs against return should never the less be ordered because it furthers the aim of the Convention by ensuring that Peru's laws relating to parental and custodial rights are given full force and effect. *Freidrich II*, 78 F.3d at 1067.

### b. No Consent or Acquiescence

Petitioner at no time consented or acquiesced to Valeria's presence in the United States. To the contrary, Petitioner pursued and continues to pursue his custody rights in Peru.

### c. No Evidence of Grave Risk

Next, there is no evidence that Valeria would be subject to physical or psychological harm or placed in an intolerable situation if returned to Peru. Respondent's unsubstantiated comments suggesting abuse or neglect made in open court are self serving and designed to sway opinion on who is the better parent. But that is not the issue this Court has jurisdiction to decide. More importantly, Respondent's comments are in direct contradiction to the findings made by two Peruvian courts. *See* DE 1, Ex. C and Exhibit A hereto. These courts found that Petitioner was not a danger to the minor and that the child would benefit from his presence in her life. *Id.* The unsupported comments made by Respondent fall well short of the disturbing proof presented by the parent opposing return in *Van De Sande v. Van De Sande*, 431 F.3d 567, 570-571 (7th Cir. 2005), where the clear and convincing evidence established that the left behind parent engaged in regular violent physical and obscene verbal abuse of the mother in front of her children. Simply

---

[8] This Court may take judicial notice of the fact that part of the judicial branch of the Peruvian government was on strike during the last quarter of 2007, which strike complicated and delayed pending proceedings in Peru.

put, the issue here is not who between Petitioner or Respondent is the better parent or who should have custody of the minor. The issue is whether Peru is Valeria's country of habitual residence and whether any reason preventing her return to that country exists. Petitioner established that Peru was the country of habitual residence at the time of abduction. The discussion above and Peruvian court orders makes clear that no harm will come to the child on return.

### d.  No Human Rights Consideration

Finally, there are no fundamental principals relating to human rights that would prevent the United States from complying with an order requiring Valeria be returned to Peru.

### III.     CONCLUSION

Petitioner Carlos Viteri demonstrated by a preponderance of the evidence that his daughter was a habitual resident of Peru at the time she was abducted by Respondent and taken to the United States.  Petitioner also established that he had custody rights to Valeria that he was exercising at the time of the abduction.  Finally, none of the exceptions that would permit this Court to deny the petition apply.  Finding that Peru is Valeria's country of habitual residence and ordering her return to that country is well within this Court's discretion and amply supported by the record.

Petitioner requests an order requiring that Valeria Carla Viteri Pflucker be returned to Peru promptly.  Petitioner alternatively requests that, should this Court conclude that removal is not appropriate despite finding that Peru is the country of habitual residence, the Court enter an order granting Petitioner access to his daughter, whom he has not seen in almost three years.

Dated: March 20, 2008                                         Respectfully submitted,

                                                              s/ *Rosa M. Tumialán*
Rosa M. Tumialán ARDC # 6226267         One of the Attorneys for Petitioner,
Katharine N. Dunn ARDC # 6282789         Carlos Viteri
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
(312) 876-1700

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2007, I electronically filed the foregoing **Brief in Support of Petition for Return of Child Under the Hague Convention**, with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record. I also caused to be delivered via electronic delivery a copy of the foregoing to Respondent's counsel, Bob Fagan at fagan@prodigy.net

s/ *Rosa M. Tumialán*