# EXHIBIT F

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

CIn Interest of Zarate
N.D.Ill.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Western Division.
In re the Interest of Perla Arlae Perez ZARATE.
Marcos Castelan ZARATE, Petitioner,
v.
Lidia Hernandez PEREZ, Respondent.
No. 96 C 50394.

Dec. 23, 1996.

*MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

INTRODUCTION

*1 Petitioner, Marcos Castelan Zarate, a resident of Mexico, filed a petition for the return of his minor child, Perla Arlae Perez Zarate, now age eight, pursuant to the Convention on the Civil Aspects of International Abduction (the Convention) and its implementing legislation, the International Child Abduction Remedies Act (the Act), 42 U.S.C. §§ 11601-11610, and naming as respondent, the child's mother, Lidia Hernandez Perez.[FN1] Jurisdiction arises under § 11603(a) of the Act. Venue is proper as the child and respondent reside in this district and division. The parties have engaged in expedited discovery and, on December 9, 1996, this court conducted a hearing to determine the ultimate issue of whether the child should be returned to Mexico under the Convention and the Act.[FN2] This order will set forth the legal background and, separately, the applicable law and findings of fact as to each issue raised by the petition and the defenses asserted thereto.

FN1. Ms. Perez is now married and known as Lidia Kiddell.

FN2. Petitioner was not present for the hearing and his proofs consisted of documentary evidence, a translation of certain of these documents and respondent's admissions in response to his pretrial request to admit. Respondent, her sister and the child testified on behalf of respondent.

BACKGROUND

The court begins by emphasizing two general principles reflected in the Convention and the Act. First, a court in the nation where the child has been removed to has jurisdiction only to decide the merits of an abduction claim, not the merits of any underlying custody dispute. *Friedrich v. Friedrich,* 78 F.3d 1060, 1063-64 (6th Cir. 1996); *Rydder v. Rydder,* 49 F.3d 369, 372 (8th Cir. 1995). Second, the Convention is generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. *Friedrich,* 78 F.3d at 1064; *Rydder,* 49 F.3d at 372.

Consistent with these broad principles, a petition seeking the return of a child to the habitual residence need only prove that the child was wrongfully removed or retained within the meaning of Article 3 of the Convention. *Rydder,* 49 F.3d at 372 (citing section 11603(e)(1)(A) of the Act). A respondent opposing return of the child may advance any of the applicable affirmative defenses to return set forth in Articles 12, 13 or 20 of the Convention. *Id.* A court applying the Convention should construe such defenses narrowly. *Id.*

Furthermore, the Act establishes the burden of proof applicable to the petition and the affirmative defenses. *See* 42 U.S.C. § 11603(e). A petitioner, in an action under section 11603(b) for the return of the child, must prove by a preponderance of the evidence that the child has been wrongfully removed or retained within the meaning of the Convention. 42 U.S.C. § 11603(e)(1)(A). As for a respondent who opposes the return of the child, he or she must establish by clear and convincing evidence either defense in Article 13b or 20 of the Convention. 42 U.S.C. § 11603(e)(2)(A). If a respondent raises one of the other defenses in Article 12 or 13, that defense must be proved by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:08-cv-50031　Document 12-7　Filed 03/20/2008　Page 3 of 7

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

CONTENTIONS

Petitioner contends that he has legal custody of his daughter, that respondent wrongfully retained her in violation of the Convention and that she should be returned forthwith to Mexico. Through her answer and opening statements, respondent contends that the court should deny the petition to return the child because: (1) petitioner has no legal right of custody; (2) petitioner did not exercise custody; (3) under Article 12, petitioner commenced proceedings to obtain return of the child over a year after the wrongful removal and respondent has shown by a preponderance of the evidence that the child is now settled in her new environment; (4) under Article 13a, respondent has shown by a preponderance of the evidence that petitioner was not actually exercising his custody rights at the time of removal or retention; (5) under Article 13a, respondent established by a preponderance of the evidence that petitioner acquiesced in the removal or retention; (6) under Article 13b, respondent proved by clear and convincing evidence that there is a grave risk that the child's return would expose her to physical or psychological harm or otherwise place her in an intolerable situation; and (7) pursuant to the fourth paragraph of Article 13, respondent has established by a preponderance of the evidence that the child objects to being returned to Mexico and has attained an age and degree of maturity at which it is appropriate to take account of her views.[FN3]

> FN3. While respondent did not mention this defense in her opening statement at the outset of the hearing, it was raised as an issue at the pretrial conference and was argued during the hearing. Thus, the court considers this affirmative defense to have been properly raised.

*Petitioner's Right of Custody*

\*2 Article 3 of the Convention provides that the retention of a child is wrongful if it is in breach of the right of custody under the law of the State in which the child was a habitual resident immediately before the retention and, at the time of retention, those rights were actually exercised or would have been but for the retention. Article 3a and b. The right of custody in Article 3 may arise by operation of law, judicial or administrative decision or by reason of an agreement having legal effect under the law of that state. Article 3.

Here, the court finds that petitioner has met his burden of proving his legal right of custody to the child. Petitioner submitted a document signed by himself, respondent and a municipal court judge of Mexico, dated August 25, 1988, which gives petitioner, pursuant to an apparent agreement between the parties, custody of the child. The court finds this document to be both authentic, *see* 42 U.S.C. § 11605 (no authentication of any application, petition, document or information shall be required for admissibility in court), and trustworthy. It bears what appears to be an official seal, and respondent identified the signature thereon as hers. While respondent testified that she did not recall appearing before a municipal court judge, she did not deny signing the document. Furthermore, she stated she did not believe the document gave petitioner permanent custody and that she would not have signed it if she had. Petitioner also submitted a second document bearing his signature and that of a Mexican municipal judge, dated May 16, 1988, which is essentially an affidavit stating that respondent abandoned the child to petitioner's care. This document also bears what appears to be an official seal. Accordingly, both documents appear to be official public records, and respondent has not offered any convincing evidence to the contrary.

These facts show, by a preponderance of the evidence, that petitioner had legal custody of the child. The court makes this finding, not based on an adverse credibility determination against respondent, but based on a determination that respondent has offered insufficient evidence to overcome the documentary evidence submitted by petitioner.[FN4]

> FN4. The court also finds that the child was a habitual resident of Mexico immediately before her removal to, and retention in, the United States. In fact, this is a point admitted by respondent. The evidence shows that respondent resided with petitioner in Mexico for a three to four month period during 1987 to 1988. Respondent, along with the child, who was born February 23, 1988, then moved in with her mother, who also resided in Mexico. About three months

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:08-cv-50031 Document 12-7 Filed 03/20/2008 Page 4 of 7

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

later, respondent came to the United States without the child. Respondent returned to Mexico approximately one and a half months later. Respondent then went back to the United States sometime later in 1988. She brought her son but not the child. The child lived with petitioner from sometime in 1988 continuously until July 1995.

*Petitioner's Exercise of Custody*

Article 3b provides that the right of custody must have been actually exercised at the time of removal or retention, or would have been had the removal or retention not occurred. The evidence here shows that as of the summer of 1995 when respondent left Mexico with the child, petitioner was still acting in the capacity of the child's caretaker and provider. Further, respondent was only allowed to leave Mexico with the child conditioned on petitioner's mother and petitioner going along. Ultimately, only petitioner's mother accompanied respondent and the child to the United States. Additionally, there is no evidence that while in Mexico, the child was under the care and custody of anyone other than petitioner. Accordingly, the court finds that petitioner actually exercised custody over the child both at the time of removal and later when his mother was sent back to Mexico without the child.<u>FN5</u>

> FN5. Article 13a also provides as an affirmative defense the failure of a custodian to actually exercise their rights of custody. Thus, had respondent raised the issue as a defense under Article 13a, the court would find she has not met her burden for the same reasons set forth in this section.

*Petitioner's Acquiescence in the Removal or Retention*

**\*3** Article 13a provides, in relevant part, that the court is not bound to return the child if respondent can show that petitioner consented to, or subsequently acquiesced in, the removal or retention. This respondent has not done. The evidence shows that when respondent first took the child to the United States, with petitioner's permission, petitioner's mother came along. Later, petitioner's mother returned, because of unexplained "difficulties" in the Rockford home, and respondent retained the child. Shortly thereafter, petitioner sought assistance through the Central Authority of Mexico to obtain return of the child. This was entirely proper under the Convention. *See* Article 7. These efforts by petitioner continued during the time the child was being retained in this country and eventually led to petitioner retaining legal counsel and filing suit under the Act. All of this conduct exhibits anything but a consent to, or acquiescence in, the retention of the child.

Respondent testified that petitioner allowed her to take the child to Rockford, Illinois but upon the condition that petitioner and his mother come along. Petitioner did not come, however, because respondent's husband would not allow it. This testimony does little, if anything, to establish respondent's burden of proving by a preponderance of the evidence that petitioner agreed to, or acquiesced in, the child's retention in the United States. Therefore, the court finds respondent has failed to establish the defense of consent or acquiescence under Article 13a.

*Grave Risk of Harm*

Article 13b provides that a child need not be returned if respondent can show there is a "grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." One court of appeals has stated that a grave risk of harm for purposes of the Convention can only exist in two situations: (1) when return of the child puts the child in imminent danger prior to the resolution of custody, such as returning the child to a zone of war, famine or disease; or (2) where the case is one of serious abuse or neglect, or extraordinary emotional dependence and the courts in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.*Friedrich, 78 F.3d at 1069*. Furthermore, the exception for grave harm is not a license for the court to speculate on where the child would be happiest.*Id. at 1068*.Additionally, it must be acknowledged that the courts of Mexico are as ready and able as our own courts to protect children. *Id.* When such trust is placed in the courts of the abducted-from country, the vast majority of claims of harm, those that do not rise to the seriousness required by the Convention, evaporate. *Id.* Finally, this provision is not intended as a vehicle to decide

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:08-cv-50031  Document 12-7  Filed 03/20/2008  Page 5 of 7

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

the child's best interests. *Id.* The person opposing the child's return must show that the risk to the child is grave, not just serious. *Id.*

*4 In the present case, respondent testified that when she brought the child to Rockford in July 1995, the child used vulgar language, would pull her hair and would open her legs and expose herself. She also had many cavities in her teeth and her mouth hurt. She also had a condition between her toes, but respondent did not take her to the doctor for this condition. Instead, her husband applied an ointment, and the condition is going away.

Respondent also testified that when she lived with petitioner in Mexico in 1987 and 1988 with her two-year-old son (of whom petitioner is not the father), she observed on one occasion petitioner attempting to place his penis in her son's mouth. Additionally, respondent testified that petitioner used marijuana, drank alcohol to excess and struck her after doing so. She testified, however, that petitioner never struck the child or physically abused her in anyway. On cross-examination, she admitted that when she discussed the issue of petitioner's conduct with petitioner's counsel and her former counsel, she never said that petitioner struck her or sexually abused her son.

As for the testimony concerning petitioner's alleged sexual abuse of her son, the court finds respondent is not credible in that regard. She continued to live with petitioner at the time and there is no evidence that she previously ever reported this incident. Further, she never mentioned any sexual abuse of her son when she discussed the issue of petitioner's conduct with petitioner's counsel and her former counsel.

The other evidence offered on this issue, if believed, is insufficient to meet the clear and convincing standard applicable to this defense. While such evidence might arguably establish a right of custody, an issue clearly not before this court, it is simply not of the extent and nature necessary to meet the risk of grave harm standard. Consequently, the court finds that respondent has failed to show by clear and convincing evidence that the child will be subjected to a grave risk of harm within the meaning of Article 13b if she is returned to petitioner in Mexico.

*Child's Objection to Return*

The fourth paragraph of Article 13 provides that this court may refuse to order the return of the child if it finds that "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views."[FN6] In this regard, the child, who is now eight years old, testified that she knew the day and month of her birth but not the year. She is in the third grade and was able to identify only two of her classes. The child also testified she did not understand the nature of the hearing, and she could not distinguish between petitioner and her mother's husband here who she also referred to as father.

> FN6. This issue is separate from the question of a witness's competence to testify, which is governed by Fed.R.Evid. 601.

Based on the child's answers to respondent's and the court's questioning, and her demeanor, the court finds her to not be of sufficient age and maturity for the court to appropriately take account of her views as to whether she would object to being returned. While both parties have submitted cases in support of their respective arguments that a particular age is dispositive, the court rejects these arguments. While age is relevant, it must be considered along with the child's degree of maturity.

*Article 12 Defense*

*5 Article 12 provides, in pertinent part, that where a period of less than one year has elapsed between the date of the wrongful retention and the date of the commencement of proceedings before the judicial or administrative authority, the authority "shall order the return of the child forthwith." Article 12 further states that the judicial or administrative authority shall also order the return of the child, even where the proceedings have been commenced after the expiration of the one-year period, "unless it is demonstrated that the child is now settled in its new environment." Section 11603(f)(3) of the Act provides that "the term 'commencement of proceedings', as used in Article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section." Section (b), in turn, requires that any person

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:08-cv-50031   Document 12-7   Filed 03/20/2008   Page 6 of 7

Not Reported in F.Supp.                                                                                          Page 5
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

seeking to initiate judicial proceedings under the Convention do so by filing a petition "in any court which has jurisdiction of such action."

In this case, petitioner filed his petition in this court on November 8, 1996. This filing constitutes a commencement of proceedings under the Act and for purposes of Article 12 of the Convention. The only other factual question which must be resolved before respondent can invoke the defense of Article 12 is when the unlawful retention first occurred.[FN7]

> FN7. It is not entirely clear which party bears the burden of proof on this threshold inquiry. Clearly, respondent has the burden of proof on any affirmative defense, of which Article 12 qualifies. Further, the exception set forth in Article 12 is not available unless the proceedings were commenced after expiration of the one-year period, which can only be determined by the date when wrongful retention began. This would suggest the burden of proof is with the respondent.

On the other hand, section 11603(e)(1)(A) gives the petitioner the burden of proving "that the child has been wrongfully removed or retained." That provision, however, only requires the petitioner to prove that an unlawful retention has occurred but does not necessarily require proof of the date such retention first began.

It is the respondent who seeks to invoke the exception under Article 12. The petitioner, for purposes of Article 12, shall obtain a return of the child whether or not the one-year period has passed. Accordingly, the court finds that the respondent has the burden of proving, by a preponderance of the evidence, whether the one-year period lapsed. To do so, she must establish the date the wrongful retention first began.

On this point, the evidence falls short of establishing on what exact date the wrongful retention began. Respondent testified that in July 1995 she went to Mexico. She further testified that, although not sure, she stayed three weeks. That same month (July) respondent returned to Rockford, accompanied by the child and petitioner's mother. Respondent did not testify, however, as to the exact date in July when they returned. She also testified that petitioner's mother remained in respondent's home with her and the child for four or five months and that the mother left and returned to Mexico "in November or December" of 1995.

While this evidence does not establish the exact date when the wrongful retention began, it can be reasonably inferred that it began later than November 8, 1995.[FN8] First, it can be inferred that the wrongful retention began when petitioner's mother returned to Mexico because of unexplained "difficulties" in the Rockford home. This is so because respondent's bringing the child to Rockford was conditioned on the mother coming along. Respondent also testified that she went to Mexico in July 1995, stayed three weeks and returned with the child that same month. Thus, at the earliest, respondent left Mexico on July 21, 1995. This fact, combined with respondent's testimony that petitioner's mother stayed in Rockford for four or five months, leads to the conclusion that petitioner's mother returned to Mexico at the earliest on November 21, 1995. Therefore, respondent has not established that the petition was filed here after the one-year period, and, thus she cannot avail herself of the defense in Article 12.[FN9]

> FN8. A date earlier than November 8 is crucial to imposing Article 12 as a defense as the date the petition was filed in this court was November 8, 1996.

> FN9. Even if the burden is on petitioner, this evidence established by a preponderance of the evidence that the petition was filed within one year of the wrongful retention.

*6 Even if Article 12 applied to this case, the court would find that respondent did not prove by a preponderance of the evidence that the child was settled in her new environment. The court can find no case defining what is meant by "settled", and the term is not defined in the Convention or the Act. The dictionary, however, defines "settled" as "unlikely to change or be changed" or "not moving about or wandering." Webster's Third New International Dictionary 2079 (1986).

Respondent testified that the child has lived in the same house since coming to Rockford in July 1995 and attends school here in Rockford. Additionally, she is involved in extra curricular activities such as ballet and sports. She also has friends in school.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Further, respondent's mother, father and siblings live in this area. While these facts are relevant to the inquiry, they do not establish that the child's situation is "settled." At best, these facts show that the child is adjusting to her new surroundings. On the other hand, the child has only been here in Rockford a little over a year. Going to school and making friends is, for most children of the age of eight, a normal development in that short period of time. These facts alone, however, do not establish that the child is settled, particularly when the time period is relatively short. Absent additional evidence of other relevant circumstances reflecting that the child's environment is "unlikely to change," respondent has failed to meet her burden in this regard.

## CONCLUSION

For the foregoing reasons, the court grants the petition and orders the child to be returned to petitioner forthwith pursuant to further order of this court.

N.D.Ill.,1996.
In re Interest of Zarate
Not Reported in F.Supp., 1996 WL 734613 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.