**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In Re Application of: | ) | |
| | ) | NO.  08 - CV - 50031 |
| CARLOS VITERI, | ) | |
| | ) | |
| Petitioner, | ) | Judge Frederick J. Kapala |
| | ) | |
| vs. | ) | |
| | ) | |
| GABRIELLA MARIA PFLUCKER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM IN SUPPORT OF RULE 12(B)(1) MOTION TO DISMISS

Respondent Gabriella Maria Pflucker respectfully submits this Memorandum in Support of her Motion to Dismiss based on the fact that this Honorable Court lacks subject matter jurisdiction over this matter.  In his Petition For Return Of Child Under The Hague Convention, Petitioner has claimed that this Court has jurisdiction under 42 U.S.C. § 11603(a).

More specifically, Ms. Pflucker respectfully suggests the Petitioner is claiming that the district court has subject-matter jurisdiction under 28 U.S.C. § 1331, as this action is alleged under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501, and its implementing legislation, the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. ("ICARA").  Under ICARA, state and federal district courts have concurrent original jurisdiction over actions arising under the Convention. 42 U.S.C. § 11603(a). Section 11603(a) states: "The courts of the States and the United States district courts shall have

concurrent jurisdiction of actions arising under the Convention."[1] The relevant portion of Article 35 of the Hague Convention on the Civil Aspects of International Child Abduction states: "This convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States."

Relevant Facts

The parties admit that the Respondent and her daughter left Peru on September 3, 2005. Petition, P. 13, Answer, P. 13. Peru's accession to the Convention was accepted by the United States and the Convention was in force between the two countries as of June 1, 2007. See, U.S. Department of State Website, accessed 3/31/2008, at www. http://travel.state.gov/family/abduction/hague_issues/hague_issues_1487.html. Thus, at the time of the alleged wrongful taking Peru was not a Contracting State as that term is used within the Convention.

Standard of Review

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. Kontos v. U.S. Dep't. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). "When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in

---

[1] Section 11603 does not grant any other basis for jurisdiction. See, Taveras v. Taveras, 197 F. Supp. 908, 912 (S. Dist. Ohio, 2005).

favor of the plaintiff." Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698, 701 (7th Cir.

2003). The Court may also review evidence beyond the allegations of the complaint to determine

if subject matter jurisdiction exists. United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942,

946 (7th Cir. 2003). "Subject-matter jurisdiction is the first question in every case, and if the court

concludes that it lacks jurisdiction it must proceed no further." Illinois v. City of Chicago, 137 F.3d

474, 478 (7th Cir. 1998).

Argument

       When "a child is taken from a non-signatory country and is retained in a signatory country,"

it is well - settled law that "there is no remedy" because the terms of the Convention "are only

applicable to those countries who signed the Convention and thereby agreed to abide by its terms."

Taveras v. Taveras, 397 F.Supp. 2d 908, 911 (S. Dist. Ohio, 2005) quoting, Mezo v. Elmergawi, 855

F. Supp. 59, 62 (E.D. N.Y. 1994); see also Mohsen v. Mohsen, 715 F. Supp. 1063 (D. Wyo. 1989).

The Petitioner, Mr. Taveras, appealed the district court's ruling (cited above), challenging the court's

order dismissing his action for lack of subject matter jurisdiction. On appeal, however, he did not

dispute the district court's holding that The Hague Convention and the ICARA do not provide any

independent basis for jurisdiction. He based his appeal on whether the district court had subject

matter jurisdiction over the parental child abduction action pursuant to the Alien Tort Claims Act,

28 U.S.C. § 1350. The Sixth Circuit Court of Appeals affirmed the district court's ruling that the

Alien Tort Claims Act did not provide subject matter jurisdiction. Taveras v. Taveraz, 477 F.3d 767,

770 (6th Cir. 2007).

       Peru was not a Contracting State at the time of the alleged wrongful taking. However, Peru

has become a signatory or Contracting State as of June 1, 2007. See, U.S. Department of State

Website:    http://travel.state.gov/family/abduction/hague_issues/hague_issues_1487.html.    Ms.

Pflucker was unable to find any reported U.S. case matching the instant fact pattern, i.e. a child

allegedly abducted from a Non-Contracting State to a Contracting State and that subsequently, the

Non-Contracting State became signatory to the Convention.  Thus it appears that this is a question

of first impression to an American court.

The question was, however, contemplated by the authors of the Convention:

Article 35 - Scope of the Convention *ratione temporis*

144 The question as to whether the Convention should apply to abductions
involving two States and which occurred prior to its entry into force or only to those
occurring thereafter, was met with different proposed solutions during the Fourteenth
Session.  The first proposal was undoubtedly the most liberal, since it envisaged the
Convention's applying to all 'abductions', irrespective of when it came into effect.
However, this decision was followed by acceptance of the idea that any Contracting
State could declare that the Convention would apply only to 'abductions' which
occurred after its entry into force in that State.  The situation therefore remained
largely unresolved, with each State, where it deemed this necessary, being able to
limit the Convention's application.   It was clear that the operation of such
declarations within a convention which is clearly bilateral in its application would
create some technical problems, to alleviate which the First Commission finally
pronounced itself in favour of the opposite solution to that first adopted, i.e. the more
restrictive.  It is seen therefore in article 35, by which the convention is to apply as
among Contracting States 'only to wrongful removals or retentions occurring after
its entry into force in those States'.  On the other hand, the inference must be drawn
from the Conventions's provisions as a whole (and in particular article 12, second
paragraph) that no time-limit is imposed on the submission of applications, provided
that the child has not reached sixteen years of age, in terms of article 4.  In fact, the
commencement of an action after the expiry of the one year period stated in the first
paragraph of article 12, merely lessens the obligation to cause the child to be
returned, whilst it is recognized that the obligation will not arise if the child is shown
to have become settled in its new environment.

145 The provision has the merit of being clear.  However, it cannot be denied
that its application is fated to frustrate the legitimate expectations of the individuals
concerned.  But since in the last resort it is a limitation on the duty to return the child,
it in no way prevents two or more States agreeing amongst themselves to derogate
from it in terms of article 36, by agreeing to apply the Convention retroactively.
Moreover, the provision concerns only those provisions in the Convention regarding

the return of the child.  In actual fact, the provision of the Convention governing access rights can, in the nature of things only be invoked where their exercise is refused or continues to be refused after the Convention has come into force.

Explanatory Report on the 1980 Hague Child Abduction Convention, Elisa Perez-Vera, Page 470,

Paragraphs 144, 145, 1980.[2]

The limit to retroactive application in the first paragraph of Article 35 can be interpreted as being somewhat ambiguous.  It could refer to retentions commencing after the Convention is in force or to retention continuing after the Convention comes into force.  A liberal interpretation would give preference to the inference identified by Perez-Vera.

The first judicial decision interpreting Article 35 was by the Scottish Court of Services.  The Scottish Court took the more restrictive view of the Convention's applicability to takings which occurred before the Convention came into force, even though a retention was ongoing.  See discussion of Kilgour v. Kilgour, 1987 S.L.T. 568 (1986) found within In Re H, (1991) 2 AC 476, attached hereto as Exhibit A.  While court recognized that the word "retention" within the Convention  had some ambiguity it held that it meant the initial retention and that it did not refer to a continuing or ongoing event.  Id.

The U.S. Department of State has published in the Federal Register the Hague International Child Abduction Convention; Text and Legal Analysis.  Article 35 of the Convention is discussed

_____

[2] Elisa Perez-Vera is the official Hague Conference reporter for the Convention.  Her explanatory report is recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the convention available to all States becoming parties to it.  51 Fed. Reg. 10503 (1986).  The Perez report is available on the internet in PDF Format at:
                http://www.hcch.net/index_en.php?act=text.display&tid=21

within that document in three places:

1. C. Timing / Cases Covered

Article 35 states that the Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States. Following a strict interpretation of that Article, the Convention will not apply to a child who is wrongfully shifted from one Contracting State to another if the wrongful removal or retention occurred before the Convention's entry into force in those States. However, under a liberal interpretation Article 35 could be construed to cover wrongful removal or retention cases which began before the Convention took effect but which continued and were ongoing after its entry into force.

51 Fed. Reg. 10504 (1986).

I.1. Temporal Qualifications

(b) Article 35. Article 35 limits application of the Convention to wrongful removals or retentions occurring after its entry into force between the two relevant Contracting States. *But see 1.C., supra.*

Id. at 10509

VI. Miscellaneous and Final Clauses

A. Article 36

Article 36 permits Contracting States to limit the restrictions to which a child's return may be subject under the Convention, i.e. expand the return obligation or cases to which the Convention will apply. For instance, two or more countries may agree to extend coverage of the Convention to children beyond their sixteenth birthdays, thus expanding upon Article 4. Or, countries may agree to apply the convention retroactively to wrongful removal and retention cases arising prior to its entry into force for those countries. Such agreement would remove any ambiguity concerning the scope of Article 35. The Department of State is not proposing that the United States make use of this article.

Id. at 10514.

Ms. Pflucker has not found any evidence of an agreement, pursuant to Article 36, between

the United States and Peru which allows for the Convention to be applied retroactively. As the very

terms of Article 35 of the Convention have the "merit of being clear", see paragraph 145, Perez-Vera, at 470 *supra*, this Honorable Court should find that Article 35 applies and that subject matter jurisdiction over this case does not exist.

WHEREFORE, Gabriella Maria Pflucker, prays this Honorable Court dismiss this matter immediately and assess all costs to Petitioner.  Ms. Pflucker is concurrently filing her Answer in observance of the need for expediency and in order to preserve her defenses to the allegations should the Court not grant her Motion to Dismiss.

Respectfully submitted,

Gabriella Maria Pflucker

By:

   /S    Robert M. Fagan
Attorney for Respondent

The Law Offices of Robert M. Fagan, Ltd.
210 Lincoln Douglas Center
10 North Galena Avenue
Freeport, IL 61032
815.233.5800
815.232.5500 Facsimile
Fagan@prodigy.net

<u>**CERTIFICATE OF FILING AND SERVICE**</u>

I, Robert M. Fagan, certify that on March 31, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

<u>**Respondent's Memorandum In Support of Rule 12(b)(1) Motion To Dismiss**</u>

was served pursuant to the district court's ECF system as to ECF filers, including Rosa M. Tumialan, and was delivered to the following non-ECF filers by United States Mail:

Hon. Frederick J. Kapala, Judge
United States District Court
Northern District of Illinois
211 South Court Street
Rockford, Illinois 61101


    /S
ROBERT M. FAGAN
Attorney for the Respondent