UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

In Re Application Of:         )
CARLOS VITERI,                )
                              )
        Petitioner,           )
                              )   Case No.  08 CV 50031
    vs.                       )   Judge Kapala
                              )   Magistrate Judge Mahoney
GABRIELLA MARIA PFLUCKER,     )
                              )
        Respondent.           )
                              )

PETITIONER'S RESPONSE TO
RESPONDENT'S MOTION TO DISMISS UNDER RULE 12(B)(1)

Petitioner, CARLOS VITERI ("Petitioner"), by his attorneys, Rosa M. Tumialán and Katharine N. Dunn of Dykema Gossett PLLC, respectfully requests that this Court deny Respondent Gabriella Maria Pflucker's ("Respondent") Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

INTRODUCTION

Petitioner and Respondent are the parents of Valeria Carla Viteri Pflucker ("Valeria"), who was born on August 24, 2000, in Lima, Peru. Although Petitioner's relationship with Respondent ended around October 2003, Petitioner obtained certain custody and visitation rights over Valeria through a Peruvian court. Brief in Support of Petition for Return of Child Under the Hague Convention, at 1. Respondent left Peru with Valeria on September 3, 2005, after obtaining a 30-day tourist visa for travel outside of Peru. Respondent did not return to Peru after the 30 day period terminated and has not brought Valeria back to Peru since the initial date of removal in September 2005.

Petitioner filed a Petition for Return of Child Under the Hague Convention of Aspects of the Child ("Hague Convention") on February 28, 2008. [DE 1]. The Petition was noticed for March 18, 2008. [DE 6]. The Court set the matter for hearing on the issue of habitual residence on March 21, 2008. [DE 10]. Petitioner filed a memorandum in support of his Petition on March 20, 2008. [DE 12]. Respondent stipulated to habitual residence being Peru. [DE 15]. The only issue remaining following the stipulation is whether the removal was wrongful under the terms of the Hague Convention. These issues are addressed in Petitioner's memorandum. [DE 12]. Respondent was granted time to respond to the memorandum. [DE 15]. Respondent filed an answer and affirmative defenses to the Petition on March 31, 2008. [DE 16]. She also filed a motion to dismiss under Rule 12(b)(1) on the same date. [DE 17, 18]. A hearing on the wrongful removal issue is presently set for April 30, 2008. [DE 15].

## STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Redina v. Falco/Redina/Ericson,* No. CIVA 05 C 7258, 2006 WL 2578926, at *2 (N.D. Ill. Sept 5, 2006) (Ex. 1). This court must accept all well pled facts as true and draw all reasonable inferences in the plaintiff's favor in ruling on a motion. *Id.* Dismissal under 12(b)(1) is proper only if it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle him to the relief requested. *Conley v. Gibson,* 355 U.S. 41, 44-46 (1957).

## ARGUMENT

Respondent seeks dismissal based on the mistaken belief that Peru was not a Contracting State to the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980 ("Convention") when the removal at issue here occurred. Respondent reasons that Peru's status

2

as a Non-Contracting State divests this Court of subject matter jurisdiction over this case. Respondent's motion to dismiss should be denied.

Peru was a Contracting State at the time of the September 2005 removal. The June 1, 2007 date cited in Respondent's brief is the entry into force date. This date should not impact this Court's ability to issue a ruling on this case. A contrary result requires a hyper technical reading of Article 35 of the Hague Convention and denies a left behind parent the unique remedy the Hague Convention was intended to provide.

The issue of whether this Court should exercise jurisdiction under these facts is a matter of first impression in the United States. Respondent's motion to dismiss should be denied because (1) Peru's status as a Contracting State satisfies the jurisdictional requirements; (2) the plain language of the Convention, coupled with the Perez Explanatory Report, show that the Convention was to be construed in a manner consistent with its intended purpose; and (3) at the very least, the entry into force date is more properly construed as a factor in determining whether an order of return is appropriate.

**I.    PERU WAS A CONTRACTING STATE AT THE TIME OF THE WRONGFUL REMOVAL IN SEPTEMBER 2005**

Peru became a Contracting State on May 28, 2001. *See* the Status Table provided by the Hague Conference on Private International Law, *available at* www.hcch.net/index_en.php?act=conventions.status&cid=24 (last visited Apr. 16, 2008). The United States enacted the Convention in 1988. *Id.* Ratification rendered these two countries Contracting States under the terms of the Convention. Respondent's contention that Peru was not a Contracting State on the date of removal to which the Convention could apply is incorrect for this reason. The only case on which Respondent relies, *Taveras v. Taveras*, 397 F. Supp 2d 908 (S.D. Ohio, 2005), is misplaced. *Taveras* stands for the limited proposition that no remedy

3

under the Convention exists when the child is removed from a **Non-Contracting State**. *Taveras*, 397 F. Supp. 2d at 911.

In *Taveras*, the children's mother removed the children from the Dominican Republic and took them to the United States in August 2004. The children were removed approximately three months <u>before</u> the Dominican Republic enacted the Hague Convention in November 2004. *Id.* The court concluded that "the children . . . were allegedly removed prior to the Convention's enactment in the Dominican Republic" and therefore, the court lacked jurisdiction. *Id.* at 913.

Those are not the facts here. Peru was a Contracting State in 2005 and had been for four years. The unique issue presented here is whether the jurisdiction vested in this Court by the fact that the child was removed from a Contracting State is destroyed because the entry into force date with the United States postdates the removal by 21 months. Petitioner submits it cannot lest the very spirit and purpose of this Convention be forsaken to elevate form over substance.

## II.    THE PURPOSE OF THE CONVENTION SUPPORTS JURISDICTION

Between 1976 and 1980, the United States was a major force in preparing and negotiating the Hague Convention.[1] The United States became a party to the Hague Convention on July 1, 1998. *See* Exec. Order No. 12,648, 53 Fed. Reg. 30, 637 (1988)  The United States implemented the Convention through the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601, expressly recognizing its international character and the need for uniform interpretation of its provisions. *Feder v. Evans-Feder,* 63 F.3d 217, 221 (3d Cir. 1995) (citing 42 U.S.C. § 11601 (b)(2), (3) (B)). The ICARA "entitles a person whose child has been abducted to the States . . . to petition in federal court for the return of the child." *Van De Sande v. Van De Sande,* 431 F.3d 567, 568 (7th Cir. 2005).

---

[1] http://travel.state.gov/family/abduction/hague_issues/hague_issues_578.html

4

The purpose of the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." (Hague Convention, Preamble). The Convention seeks to remedy the wrongful removal or retention of children by returning parties to the pre-abduction status quo so that any custody dispute can be resolved in the country of habitual residence. *Friedrich v. Friedrich* (Friedrich I), 983 F.2d 1396, 1400 (6th Cir. 1993). The Convention addresses the situation where parents involved in a custody dispute wrongfully remove children from their habitual residence and take them into another country in search of a more sympathetic court. *Friedrich v. Friedrich*, (Friedrich II), 78 F.3d 1060, 1063-1064 (6th Cir. 1996).

The Hague Convention reflects a universal concern about the harm done to children by parental kidnapping and a strong desire to implement an effective deterrent to such behavior. (Hague Convention, Preamble). By design, the Hague Convention seeks to put all parties in a custody dispute in the same position they would have been in if the child had not been wrongfully removed. The Convention aims to prevent "the use of force to establish artificial jurisdictional links on an international level, with a view to obtaining custody of a child." Elisa Perez-Vera, Explanatory Report, P11, 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982) (hereafter "Perez-Vera Report").

When interpreting treaties, United States courts look beyond the words of the treaty to the treaty's purpose and legislative history. *See Gonzalez v. Gutierrez*, 311 F.3d 942 (9th Circuit 2002) (stating "Although in interpreting a treaty we 'begin with the text,' we may 'look beyond the written words' to other factors for interpretive guidance" (quoting *Eastern Airlines, Inc. v.*

5

*Floyd*, 499 U.S. 530, 534-35 (1991))). The guidance needed here is to assist the Court in determining the effect of an entry into force date that postdates a removal from a Contracting State on a left behind parent's ability to pursue relief under the Hague Convention.

### A.    Entry Into Force Date

Respondent relies on the language in Article 35 to contend that jurisdiction is not present here. Respondent quotes at sections of the Elisa Perez-Vera, Explanatory Report, Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction (1982) ("Perez Report") to support her position. But this Court should not overlook the observations in the Perez Report discussing the difficulties in applying the strict application and the fact that, save for age of the child, "no time limits is imposed on the submission of applications." Perez Report, at 470, ¶144-145. The Perez Report also candidly recognizes that strict application of the entry into force provision only to removals post-dating the entry is "fated to frustrate the legitimate expectations of the individuals concerned." *Id*.

These observations are consistent with those discussed in the Federal Register with regard to Article 35. The Federal Register provides:

> However, under a liberal interpretation, Article 35 could be construed to cover wrongful removal or retention cases which began before the Convention took effect and were ongoing after its entry into force. 51 Fed. Reg. 10504 (1986).

These comments acknowledge the difficulties of effecting bilateral implementation of the Hague Convention. These materials also provide an equitable solution applicable to cases where, as here, the removal involves two Contracting States but pre-dates the entry into force between those two dates—the Convention should still apply if the removal is ongoing following the entry into force. The more liberal interpretation is appropriate here.

6

### B. Adopting the Liberal Construction Gives Effect to the Convention and its Purpose

The discussion above makes clear that the fundamental purpose the Convention was divined into existence was to protect children from the effects of international child abduction. That purpose is all but thwarted here if this Court adopts the strict interpretation proffered by Respondent. To the contrary, a strict interpretation where, as here, the wrongful removal continues beyond the entry into force date ensures that a left behind parent will never be able to seek the relief the Convention's drafters intended.

One of the purposes of the Hague Convention identified in its preamble is to provide an effective deterrent against parental kidnapping. Adopting the strict construction urged will have the opposite effect.

Respondent secured travel documents under false pretenses, falsely claiming that she did not know Petitioner's whereabouts. Respondent remained in the United States with Valeria despite the expiration of the 30 day tourist visa she was granted for travel outside of Peru based on her false representations. [DE 1, Ex. B, ¶4]. Granting the motion to dismiss rewards the Respondent's fraudulent representations for which there are currently criminal charges pending in Peru. [DE 12, Ex. E, Background ¶4]. By dismissing this case for want of subject matter jurisdiction, the Court all but rewards the Respondent's actions. Left behind parents are at the mercy of the abducting parent to the extent that their child happens to be removed from a Contracting State to another and that removal coincidentally happens before the entry into force date.

### C. Entry Into Force Should Be A Factor Considered In Addressing The Merits

Finally, Petitioner submits that the entry into force date should be one of the factors a court considers in determining whether return is appropriate in a given case. Indeed, the Perez

7

Report observed that there is no time limit (except the age of the child) on pursuing petitions. The Report acknowledges that the passage of time only lessens the obligation to return the child:

> On the other hand, the inference must be drawn from the Convention's provisions as a whole (and in particular article 12, second paragraph) that no time-limit is imposed on the submission of applications, provided the child has not reached sixteen years of age, in terms of article 4. In fact, the commencement of an action after the expiry of the one year period stated in the first paragraph of article 12, ***merely lessens the obligation to cause the child to be returned,*** whilst it is recognized that the obligation will not arise if the child is shown to have become settled in its new environment. Perez Report 470, ¶ 144. (Emphasis added).

These comments reflect the understanding that there is no absolute duty to return. The Hague Convention sets out many factors, temporal and otherwise, that qualify the right to return. *See e.g*. Articles 13; 20.

The entry into force date should not prevent Petitioner from having his day in court. The relationship between two Contracting States with respect to the Convention at the time of the abduction should be one of the many factors the Court considers when determining the merits of the case. This construction of the Convention would allow the purpose of the Convention to be served while at the same time allowing for the recognition of the relevant accession and entry into force dates.

Relief in the form of return of his child to Peru is only available to the Petitioner under the Covention. Given the purpose behind the Hague Convention and the fact that both Peru and the United States were Contracting States at the time of the abduction, the Court should find that it has jurisdiction to hear Petitioner's case.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Respondent's motion to dismiss for lack of subject matter jurisdiction.

WHEREFORE, Petitioner CARLOS VITERI respectfully requests that this Court deny Respondent's motion to dismiss and grant such other as this Court deems proper.

**Dated**: April 18, 2008                    Respectfully submitted,
                                             **Carlos Viteri**


                                             By: s/ Rosa M. Tumialán
                                                  Attorney for Petitioner

Rosa M. Tumialán
Katharine Dunn
Attorney for Petitioner
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on **April 18, 2008,** I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel set forth below:

Robert M. Fagan (E-Mail fagan@prodigy.net)

s/ Irina V. Frye