UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CARLOS VITERI, | ) |
|       Petitioner, | ) |
| v. | )   No. 08 CV 50031 |
| GABRIELLA MARIA PFLUCKER, | ) |
|       Respondent. | ) |

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

On February 28, 2008, petitioner, Carlos Viteri, filed a Petition for Return of Child under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S., No. 11,670, 1343 U.N.T.S. 89 (hereinafter Convention). Before this court is respondent's motion to dismiss the petition for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the court denies respondent's motion to dismiss.

I. BACKGROUND

In his petition, petitioner alleges that he and respondent, Gabriella Maria Pflucker, are the parents of the minor child, Valeria Carla Viteri Pflucker, who was born August 24, 2000, in Lima, Peru. Petitioner alleges that after the parties' relationship ended around October 2003, petitioner obtained visitation rights from the Peruvian courts. Petitioner further alleges that on September 3, 2005, respondent left Peru with the child and traveled to the United States, and did not return to Peru

by the time her tourist visa expired on October 3, 2005. According to petitioner, since that time, respondent has neither returned the child to Peru, nor allowed petitioner visitation with the child. Petitioner requests the return of his daughter to Peru under the Convention so that the Peruvian courts may conduct custody proceedings in this matter. The respondent has stipulated that the child's habitual residence prior to her retention of the child in the United States was Peru.

Respondent now moves to dismiss the petition for lack of subject matter jurisdiction. Respondent argues that the Convention was not in force between the United States and Peru at the time the child was retained, and therefore, that this court does not have jurisdiction under the Convention to order the return of the child. Both parties stipulated in open court that Peru acceded to the Convention on May 28, 2001, that the Convention entered into force in Peru on August 1, 2001, and that the Convention did not enter into force between the United States and Peru until June 1, 2007.[1]

## II. DISCUSSION

### A. Statement of the Law

As a preliminary matter, the court notes that respondent's motion to dismiss may be more properly reviewed as a Rule 12(b)(6) motion to dismiss. The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress implemented the Convention in the United States through the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. Section 11603(a) of the Act

---

[1] The Convention entered into force for the United States on July 1, 1988. Exec. Order No. 12,648, 53 Fed. Reg. 30,637 (Aug. 11, 1988).

specifically provides that the "United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." 42 U.S.C. § 11603(a).

Respondent argues this case should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) because the Convention only applies to wrongful removals or retentions occurring after its entry into force in Contracting States and that the Convention was not in force between the United States and Peru at the time of the child's wrongful retention in this case.[2] However, in this court's view, respondent's motion is more appropriate pursuant to Rule 12(b)(6). Petitioner's claims arise under the Convention, and thus, both 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a) give this court subject matter jurisdiction to adjudicate petitioner's claims. In actuality, respondent's motion does not challenge this court's power to rule but, rather, whether petitioner has stated a cause of action entitling him to relief. A few district courts that have looked at similar issues have applied both Rule 12(b)(1) and Rule 12(b)(6) without much discussion. See Taveras v. Taveras, 397 F. Supp. 2d 908, 910-913 (S.D. Ohio 2005); Mezo v. Elmergawi, 855 F. Supp. 59, 64 (E.D.N.Y. 1994). That

---

[2]The parties do not discuss at length whether respondent's alleged actions in this case constitute wrongful removal or retention. Although this court expresses no opinion either way, because petitioner alleges that respondent obtained a court's permission to travel with the child to the United States for 30 days, for the purposes of this motion the court will refer to respondent's actions as those of wrongful retention. Courts have generally distinguished a wrongful removal, where one parent moves the child out of the State of habitual residence in violation of the custodial rights of the other parent, from a wrongful retention, where one parent retains the child in a State other than her habitual residence after a permitted visitation period has ended. See Pielage v. McConnell, 516 F.3d 1282, 1287-88 (11th Cir. 2008); Toren v. Toren, 191 F.3d 23, 27-28 (1st Cir. 1999); Shalit v. Coppe, 182 F.3d 1124, 1126 (9th Cir. 1999); Feder v. Evans-Feder, 63 F.3d 217, 218-20 (3d Cir. 1995). This is consistent with the Pérez-Vera Report, see infra note 5, which states "the reference to children 'wrongfully retained' is meant to cover those cases where the child, with the consent of the person who normally has custody, is in a place other than its place of habitual residence and is not returned by the person with whom it was staying." Elisa Pérez-Vera, Explanatory Report, 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction ¶ 57 (1982).

3

being said, it appears unnecessary to determine which subsection of Rule 12 applies in this case because both Rule 12(b)(1) and Rule 12(b)(6) require the same result.[3]

Articles 35 and 38 of the Convention are those which are most pertinent to respondent's motion to dismiss. Article 35 states, "This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States." Convention, art. 35. Article 38 states that the Convention is open to accession by non-member States, and that, "The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession." Convention, art. 38. Article 38 further states that after a State's initial accession,

> The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession . . . . The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

---

[3] A significant difference between the court's consideration of a motion to dismiss pursuant to Rule 12(b)(1) and a motion under Rule 12(b)(6) is that in considering a Rule 12(b)(1) motion a court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 625 (7th Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3485 (U.S. Mar. 3, 2008) (No. 07-1127). In contrast, in reviewing an ordinary Rule 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster. Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). "If a district court considers matters outside the pleadings, our procedural rules require that the motion shall be treated as one for summary judgment . . . ." Id. (quotation marks omitted). However, this distinction is inapplicable in this case because a court is allowed to take judicial notice of matters of public record outside the pleadings without converting a Rule 12(b)(6) motion into a motion for summary judgment. Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994); see also Arthur Anderson LLP v. Fed. Ins. Co., No. 06 C 1824, 2007 WL 844632, at *7 (N.D. Ill. Mar. 16, 2007). Thus, because the dates upon which the countries entered the Convention are a matter of public record, the court may consider this information when ruling on a motion under either Rule 12(b)(1) or Rule 12(b)(6).

Id. Thus, the Convention enters into force between an acceding State and a member Contracting State only when the Contracting State accepts the acceding State's accession to the Convention.[4]

In this case, there are two primary issues. The first is whether the court should interpret Article 35 liberally to apply to actions where the wrongful removal or retention of a child occurred before the Convention was in force in a particular State, but continued after its entry into force. If the answer to the first inquiry does not allow such a liberal application, the second issue that arises is whether, in light of the language of Article 38, Article 35 applies to wrongful retentions involving Peru and the United States, which occurred after Peru's initial accession to the Convention, but prior to the United States' acceptance of Peru's accession. Both issues appear to be of first impression in the United States.

B. Continuing Removal or Retention

Initially, petitioner argues that because respondent's wrongful retention of the child has continued following both Peru's accession to the Convention and the United States' acceptance of Peru to the Convention, a liberal interpretation of Article 35 allows the Convention to apply in this case. "The interpretation of a treaty, like the interpretation of a statute, begins with its text." Medellin v. Texas, 552 U.S. ___, 128 S. Ct. 1346, 1357 (2008). Although courts first look to the plain language of a treaty, treaties are construed more liberally than private agreements, and to ascertain their meaning courts also look to the negotiation, the intent of the parties, the drafting

---

[4]Accessions are made by countries that were not members of the Hague Conference on Private International Law at the time of its Fourteenth Session. "An accession is effective only between the acceding country and those contracting states that have accepted the accession." Gonzalez v. Gutierrez, 311 F.3d 942, 944 n.2 (9th Cir. 2002). "The distinction between accession and ratification is that only nations that have ratified the Convention can be considered signatories under Article 37. Accession, by contrast, binds a country only with respect to other nations that accept its particular accession under Article 38." Id. at 945 n.2.

history and the post-ratification understanding of signatory nations.  Id.; Air France v. Saks, 470 U.S. 392, 396-97 (1985); Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 618 (7th Cir. 1989).  Moreover, the meaning given to treaties by the departments of government charged with their negotiation and enforcement is given great weight.  Sanchez-Llamas v. Oregon, 548 U.S. 331, ___, 126 S. Ct. 2669, 2685 (2006).

Article 35 states that the Convention applies "only to wrongful removals or retentions occurring after its entry into force in those States."  Convention, art. 35.   Thus, the language of Article 35 clearly limits wrongful removals and retentions subject to the Convention to those that occur after its entry into force.  However, both the State Department's legal analysis and the explanatory report by Elisa Pérez-Vera, the official Hague Conference reporter for the Convention, suggest that a more liberal interpretation of Article 35 may be appropriate.[5]  In its detailed analysis of the Convention, which was designed to assist the Senate in their consideration of the Convention and to help the bench and bar, the Department of State report provides:

> Article 35 states that the Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States. Following a strict interpretation of that Article, the Convention will not apply to a child who is wrongfully shifted from one Contracting State to another if the wrongful removal or retention occurred before the Convention's entry into force in those States. However, under a liberal interpretation Article 35 could be construed to cover wrongful removal or retention cases which began before the Convention took effect but which continued and were ongoing after its entry into force.

---

[5] Elisa Pérez-Vera's explanatory report is recognized by the Conference "as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,503 (1986). The Seventh Circuit, as well as many others, have recognized the Pérez-Vera Report as an authoritative source for interpreting the Convention's provisions. Koch v. Koch, 450 F.3d 703, 711 n.4 (7th Cir. 2006). The full text of the report is available at http://hcch.e-vision.nl/upload/expl28.pdf.

Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,504 (1986) (hereinafter State Department Analysis).

Pérez-Vera's report further explains that several proposals were considered as to whether the Convention should apply to abductions which occurred prior to its entry into force or only to those occurring thereafter. Elisa Pérez-Vera, Explanatory Report, 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction ¶ 144 (1982) (hereinafter Pérez-Vera Report). Eventually, the members of the Convention agreed to the more restrictive approach, in which the Convention was to apply only to wrongful removals or retentions occurring after its entry into force. Id. Pérez-Vera noted, however, that no-time limit, except for the child's age, was imposed on the submission of applications and that the States were in no way prevented from agreeing to derogate, amongst themselves, from the limitations of the Convention. Id. ¶¶ 144-45.

Petitioner argues that the court should interpret Article 35 liberally, consistent with the comments of the State Department analysis and Pérez-Vera's report, and find that because the child's wrongful retention in the United States continued after the Convention was in force between Peru and the United States, the Convention applies. Respondent, on the other hand, argues that the term retention, as used in Article 35, is a solitary event that, in this case, occurred prior to the entry into force of the Convention between Peru and the United States. The court agrees with respondent.

First, although there is little judicial authority on this issue, the judicial authority offered by the parties supports the interpretation of "wrongful retention" as a solitary event. In Taveras, the District Court for the Southern District of Ohio considered a Hague Convention petition in which the children were removed from the Dominican Republic in August 2004. Taveras, 397 F. Supp.

7

2d at 909.  The Dominican Republic thereafter joined the Convention on November 1, 2005.  Id. at 911.  Although it was not the deciding factor in the case, the Taveras court noted that under the strict interpretation of the Article 35 the Convention would not apply to the children's removal because the children were removed before the Dominican Republic promulgated laws enacting the Hague Convention.  Id. at 912-13.

Even more convincing than the Taveras court's peripheral consideration of Article 35 is the analysis of this issue by the House of Lords, the court of last resort in the United Kingdom, in their opinion in the consolidated appeals of In re H. and In re S., (1991) 2 A.C. 476 (H.L.).  In these consolidated cases, petitioning mothers sought the return of their children, who had been removed to England by their fathers, from Canada and the United States, respectively, prior to the time the Convention entered into force in those countries.  Id. at 491-93.  The children remained in England following the entry into force of the Convention in those States, and the petitions were filed thereafter.  Id. at 497.  That court held that an act of wrongful retention, as contemplated by the Convention, is a single event, not an ongoing state of affairs.  Both Sir Stuart Smith and Lord Brandon of Oakbrook found that other portions of the Convention, specifically Article 12, were decisive in this interpretation.  Id. at 488.  Article 12, states, in part,

> Where a child has been wrongfully removed or retained . . . and, at the date of the commencement of the proceedings . . . a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
>
> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Convention, art. 12. Sir Smith remarked that Article 12 "postulates a single event, both in the case of removal and retention from which the period of one year can begin to run." In re H., 2 A.C. at 488. "It cannot be a continuing event." Id. Similarly, Lord Brandon concluded that "for the purposes of the Convention, both removal and retention are events occurring on a specific occasion, for otherwise it would be impossible to measure a period of one year from their occurrence." Id. at 499. This court agrees with the reasoning of Sir Smith and Lord Brandon that Article 12 specifically contemplates wrongful removals and retentions as specific occasions, and not a continuing state of affairs, and as a result favors an interpretation of the language of Article 35 which refers to a specific date of the wrongful removal or retention.[6]

Moreover, aside from the language of the Convention itself, this interpretation is supported by the negotiation and drafting history of Article 35, as accounted by Pérez-Vera. Pérez-Vera Report ¶¶ 144-45. The members of the Convention considered and debated whether the Convention should apply to wrongful removals and retentions occurring prior to the entry into force of the Convention, and decided that question in the negative. Id. ¶ 144. If Article 35 applied to continuing wrongful removals and retentions, as Pérez-Vera seems to suggest, this would swallow the rule articulated by the Convention. As the Convention is drafted to effectuate the return of children and not as a punitive measure, see United States v. Amer, 110 F.3d 873, 881 (2d Cir. 1997), the Convention will be utilized only when a child is presently removed and retained, and not after his or her return. As a result, if Article 35 is interpreted as petitioner suggests, it would likely apply to

---

[6]The Supreme Court of Austria appears to have similarly concluded that under Article 35 the date of wrongful retention is a static date. Oberster Gerichtshof [OGH] [Supreme Court] June 25, 1992, 8 Ob 535/92 (Austria). See Hague Conference on Private International Law, The International Child Abduction Database, Case Summary of Case No. HC/E/AT 566 (June 25, 1992), available at http://www.incadat.com/index.cfm?fuseaction=convtext.showFull&code=566&lng=1.

all petitions for return of a child, whether or not the child was removed or retained before or after the Convention took force. This would essentially render the language of Article 35 meaningless. As the history of the Convention suggests, Article 35 was adopted after discussion and debate, and thus, this court will not render the chosen words meaningless.

Based on the foregoing analysis, the court declines petitioner's invitation to liberally interpret Article 35 as allowing the Convention to apply to wrongful removals or retentions that occur prior to entry into force, but continue after the entry into force. Consequently, in this case, the court considers the static date of the alleged wrongful retention October 3, 2005, and applies Article 35 accordingly. However, this does not end the inquiry. In this case, the child's alleged wrongful retention occurred prior to the Convention's entry into force between the countries, but following its entry into force in Peru.

### C. Entry into Force

Although the court finds that the language of Article 35 clearly expresses a fixed starting time by which the Convention applies, identifying the required status of the countries involved at the time of the wrongful removal or retention is a more difficult task. In this case, there is no dispute that the Convention had entered into force separately in both the United States and Peru prior to the child's removal from Peru and retention in the United States. However, because the Convention had yet to enter into force between those two countries, the issue is whether the alleged wrongful retention in this case is subject to the Convention.

As discussed above, Article 35 of the Convention states that the Convention applies "as between" Contracting States only to wrongful retentions occurring "after its entry into force in those States." However, the Articles of the Convention provide two separate instances at which the

10

Convention "enters into force." In order for a State to accede to the Convention, it must submit an instrument of accession to the Ministry of Foreign Affairs of the Kingdom of the Netherlands. Convention, art. 38. Thereafter, both Articles 38 and 43 provide that the Convention shall "enter into force" on the first day of the third calendar month after the deposit of the country's instrument of accession. Convention, arts. 38, 43. However, Article 38 continues, and states that despite an acceding State's instrument of accession, the accession only has effect on the relations between States when a Contracting State declares its acceptance of the accession. Convention, art. 38. Article 38 outlines the effect of accession on the relations between States, stating,

> The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

Id. Because the Convention offers these two separate times at which the Convention "enters into force," this court is left to determine which "entry into force" is referred to in Article 35.

In § 11601(b)(3)(B), Congress recognized the need for uniform international interpretation of the Convention. 42 U.S.C. § 11601(b)(3)(B). Unfortunately, the parties offer no law from this or any other signatory nation confronting the issue outlined above. Nor do the parties offer any executive interpretation of this portion of the Convention to which this court would defer. See Sanchez-Llamas, 126 S. Ct. at 2685; Hamdan v. Rumsfeld, 548 U.S. 557, ___, 126 S. Ct. 2749, 2846 (2006) (Thomas, J. dissenting). As a result, because the phrase "entry into force" in Article 35 could be reasonably construed to support the position of either of the parties, see Hackl v. Comm'r of Internal Revenue, 335 F.3d 664, 667 (7th Cir. 2003), this court will look to the language of the articles and the drafting history to determine the meaning of the phrase "entry into force" in Article 35.

Turning first to the language of the Convention, the Court finds that, for several reasons, the language of the Convention favors petitioner's position. First, Article 35 states that the Convention applies to wrongful retentions occurring "after its entry into force in those States." The phrase "in those States" is a reference to the "Contracting States" previously referred to in Article 35. Although the Convention, does not define the term "Contracting State," nothing in the language of the Convention implies that a State must be accepted by others to become a Contracting State. Specifically, Article 38 states that the Convention enters into force for an acceding State the first day of the third calendar month after the deposit of the instrument of accession. The language of Article 38 also states that the accession has effect only as to the relations between "the acceding State and such Contracting States as will have declared their acceptance of the accession." Certainly, these other Contracting States could be States that previously acceded to the Convention and had not yet been accepted by any other State. In addition, the second paragraph of Article 35 provides that "the reference in the preceding paragraph to a Contracting State shall be taken to refer to a territorial unit in relation to which this Convention applies." Convention, art. 35. Article 39 states that the Convention extends to such territorial units "at the time the Convention enters into force for <u>that</u> State." Convention, art. 39 (emphasis added). Thus, Article 35 and 39, taken together, suggest that a territorial unit is taken as a Contracting State, when the Convention enters into force for the State in which the territorial unit lies, and not between the State and any other Contracting State. Thus, the language "in those States" in Article 35 refers to all States that have ratified or acceded to the Convention, and not merely to States that already have been accepted by other Contracting States.

In addition to the express language of Article 35, the language omitted from Article 35 is also significant. The drafters of Article 35 could have easily clarified that, as respondent suggests,

12

"entry into force" means that each State involved must have accepted the other. For example, the framers could have stated that the Convention only applied to wrongful removals or retentions occurring in Contracting States that, at the time of removal or retention, had agreed to accept one another. The framers could have also used the term "as between" those States, as they did in Article 38. Instead, Article 35 states only that the Convention had to have entered into force "in those States."

The effect of the phrase "in those States" in Article 35 is also significant when one compares it to the different uses of the term "entry into force" in Article 38. Article 38 indicates a slight difference between the phrase "entry into force" as applied to one acceding nation, or as applied to multiple nations. In discussing the accession of one nation, Article 38 articulates the time at which the Convention enters into force "for a State" acceding to the Convention. Convention, art. 38. Later, in its discussion of multiple countries, Article 38 refers to the date the Convention will enter into force "as between" States. Id. This distinction, although minor, is significant as to the meaning of Article 35. The reference in Article 35 to an entry into force "in those States" is more comparable to the phrase "for a State" in Article 38 than the phrase "as between" States, and thus, is more akin to an individual State's accession to the Convention, as opposed to its acceptance by another State. Finally, this interpretation is reinforced by the language of Article 43, which only refers to one type of entry into force, as the date the Convention vests in an individual State without reference to others.[7] Convention, art. 43.

---

[7]Article 43 states, in part:
The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.
Thereafter, the Convention shall enter into force-

The court also notes that although Article 35 uses the phrase "shall apply as between Contracting States" the use of the word "between" in Article 35 does not modify the phrase "entry into force" as it does in the latter part of Article 38.  Rather, the word "between" in Article 35 indicates that the Article addresses the status of the two States involved in the removal or retention. In requiring the Convention to be in force "in <u>those</u> States," Article 35 mandates that, for the Convention to apply, each State involved in the particular removal or retention must have been a Contracting State at the time of the removal or retention.  Convention, art. 35 (emphasis added). It does not necessarily follow that those States must have accepted one another at the time.

In addition to the language of the Convention, Pérez-Vera's report indicates that during the negotiations of the Convention, "[t]he question as to whether the Convention should apply to abductions involving two States and which occurred prior to its entry into force or only to those occurring thereafter, was met with different proposed solutions . . . ."  Pérez-Vera Report ¶ 144. Pérez-Vera recounts that following an initial proposal, which suggested the Convention apply to all abductions regardless of when the Convention came into effect, some members of the Convention suggested that "any Contracting State could declare that the Convention would apply only to 'abductions' which occurred after its entry into force in <u>that</u> State."  Id. (emphasis added).[8]  There

---

      (1) for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession.

Convention, art. 43.

    [8]When it became clear that such individual declarations would create technical problems, the Commission pronounced itself in favor of a more universal approach in which all Contracting States apply the Convention only to wrongful retentions or removals occurring after its entry into force in those States.  Pérez-Vera Report ¶ 144.

is no indication in the Pérez-Vera Report that the authors of Article 35 contemplated whether an acceptance of the acceding State had yet occurred. Thus, the drafting history favors an interpretation of Article 35 which applies the Convention to wrongful removals and retentions occurring after the Convention is in force in the State of habitual residence and in the State to which the child is removed or retained, regardless of the time of any other State's acceptance of the new State's accession.

This interpretation of Article 35 does not disturb the parties' decision to choose their co-signatories, as an application for return cannot be successfully made in a State until the Convention enters into force between the acceding State and the Contracting State. Convention, art. 38; State Department Analysis at 10514. Article 38 states that the "accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession." Convention, art. 38. The relations between States begin with an application from one to another. Thus, although the Convention applies to a wrongful removal or retention that occurs after a State's instrument of accession is in force, an application for return related to that removal or retention will not have any effect in another Contracting State until that individual Contracting State has accepted the acceding State.

After reviewing the above factors, the court finds Article 35 requires only that the wrongful removal or retention at issue occur after the Convention enters into force individually in the acceding State and in the State to which the child was removed to or is retained. Accordingly, this court finds that the alleged wrongful retention in this case is subject to the Convention because it occurred after the Convention entered into force in both of the relevant States in this action. As a result, respondent's motion to dismiss is denied.

ENTER:

_____
FREDERICK J. KAPALA
District Judge

Date: May 6, 2008